# Brill v. Brill, Appellant.

*Contract—Bond—Right of action by party not named in contract—Party to consideration—Release by natural guardian—Parent and child—Illegitimate child.*

1. If a promise in a contract be to pay money to a third person, but it is in fact made for the benefit and in relief of the other party to the agreement, the third party obtains no rights under the contract.

2. If, however, the promise to pay to the third person is not for the benefit primarily of the other party to the contract, but for that of the third person himself, the latter has a legal or equitable interest in the contract which enables him to enforce his rights thereunder, even though he himself was not a party to the consideration paid to the promisor.

3. The question as to whether or not the third person is a party to the consideration, is not a conclusive factor.

4. Where a bond given by a man to the mother of his illegitimate child shows that it includes a fund for the maintenance and support of the child, the child has an interest therein, although he is not named as a party in the contract.

5. In such case the child's interest cannot be defeated by a release executed by the mother to the obligor, inasmuch as the mother had no authority merely by reason of her natural guardianship to compound or release his rights under the bond.

Argued January 6, 1925. Appeal, No. 218, Jan. T., 1925, by defendant, from order of C. P. No. 2, Phila. Co., March T., 1924, No. 1068, making absolute rule for want of a sufficient affidavit of defense, in case of Edward J. Brill, by his next friend, Wm. J. Seabrooke, v. J. Elwood Brill. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ. Affirmed.

Assumpsit on a bond.

Rule for judgment for want of a sufficient affidavit of defense. Before Stern, J.

Judgment for plaintiff for $4,840, in an opinion by Stern, J., which was as follows:

This suit is by Edward J. Brill, by his next friend, William J. Seabrooke, against J. Edward Brill. The statement of claim alleges, in substance, that the plaintiff, Edward J. Brill, is a minor son of the defendant and one Mary A. Seabrooke, having been born on June 6, 1911, that the plaintiff's alleged parents were never legally married, that the defendant deceived Mary A. Seabrooke into believing that he had procured a divorce from his former wife when, in fact, no such divorce had been obtained. It is further alleged that on February 9, 1914, the defendant executed the bond on which the present suit is brought. This bond is in the penal sum of $20,000. The obligee named therein is the said Mary A. Seabrooke. The condition of the bond is that the defendant shall pay to the obligee $150 per month for the term of five years, of which $110 is stated to be for the benefit of the obligee, and $40 "to the obligee as guardian of the person of her son Edward, through the guardian of the estate of the said Edward." At the expiration of the said term of five years the payments are to be reduced to $120 per month, of which $80 is stated to be for the benefit of the obligee and to be paid to her during the term of her natural life, and $40 is to be paid "to the obligee as guardian of the person of her son, Edward, through the guardian of the estate of the said Edward," until he attains the age of twenty-five, should he so long survive. The bond further provides that if the defendant should die before the death of the obligee and her son, Edward, the principal sum of $20,000 is to be paid by the obligor's estate to a trustee in trust for the said obligee as to one-half the sum, and as to one-half the sum in trust for her son Edward, and the monthly payments thereupon should cease. It is further provided that if the obligee marries, the monthly payments should cease, the obligee herself should receive nothing thereafter, but the amount provided for her son Edward should be placed in the hands of a trustee in trust until he attains the age of twenty-five years, he meanwhile receiving the

income, and on his reaching twenty-five the principal sum is to be paid to Edward or his guardian.

The statement of claim proceeds to allege that the defendant defaulted in some of the monthly payments provided for in the bond, whereupon the said Mary A. Seabrooke brought suit against him for the arrearages, and said suit was compromised by the defendant paying to Mary A. Seabrooke the sum of $5,000, in consequence of which settlement a release was executed by Mary A. Seabrooke to the defendant purporting to release him from all claims, obligations and payments under the terms of said bond, and from the payment of any sums for the "past or future support and maintenance of my said son Edward." Thereafter the defendant made no further payments under the bond, and the present suit is by the said minor, Edward J. Brill, bringing the action by his next friend, William J. Seabrooke (father of Mary A. Seabrooke, and therefore grandfather of the plaintiff) to recover the arrearages due at the time the suit was begun.

The defendant has filed an affidavit of defense, in which he states that he has no knowledge as to the paternity of the minor plaintiff, is unable to obtain information in regard thereto, believes that the averment as to such paternity is untrue, and expects so to prove. He also denies having fraudulently deceived Mary A. Seabrooke as to being a divorced man, but admits that he lived with her in the relationship of husband and wife. The affidavit further alleges that the only person entitled to bring suit on the bond is Mary A. Seabrooke, and that she is debarred from so doing by reason of the release given by her as set forth in the statement of claim and as reiterated in the affidavit of defense.

The present rule is for judgment for want of a sufficient affidavit of defense.

There are two questions involved in the determination of this rule: (1) Has the present plaintiff, the minor son of Mary A. Seabrooke, any right of action on the

bond in suit, or did he at any time have such right of action, in view of the fact that the obligee named in the bond is Mary A. Seabrooke and not the plaintiff? (2) If the present plaintiff did have a right of action, did he lose such right and his interest in the bond by reason of the release given to the defendant by plaintiff's mother, Mary A. Seabrooke?

(1) Among the puzzling and uncertain cases that arise for legal decision are those involving the question as to when a third person may bring suit upon a contract in which he is not named as a party. There are numerous authorities bearing upon this question, and some of them purport to lay down general principles as a guide in regard thereto; unfortunately, however, the expression of these principles is sometimes rather general and vague and therefore difficult of application to specific instances.

Of course, the leading case in our state is Blymire v. Boistle, 6 Watts. 182, where it is said that: "Where one person contracts with another to pay money to a third, or to deliver over some valuable thing, and such third person is thus the only party in interest, he ought to possess the right to release the demand, or to recover it by action. But when a debt already exists from one person to another, a promise by a third person to pay such debt, being for the benefit of the original debtor, and to relieve him from the payment of it, he ought to have a right of action against the promisor for his own indemnity; and if the promisor were also liable to the original creditor, he would be subject to two separate actions at the same time, for the same debt, which would be inconvenient, and might lead to injustice."

This statement is quoted with approval in numerous subsequent cases, and seems to amount in principle to this, that if the promise be to pay money to a third person, but it is made for the benefit and in relief of the other party to the agreement, the third person obtains no rights under the contract. If, on the other hand, the

promise to pay to the third person is not for the benefit primarily of the other party to the contract but for that of the third person himself, the latter has a legal or equitable interest in the contract which enables him to enforce rights thereunder, even though he himself was not a party to the consideration paid to the promisor.

As already stated, the application of this general principle to specific cases has proved to be a difficult one, and as a result it is not possible to reconcile all of the cases, in the long line, which have followed Blymire v. Boistle. Without discussing these in detail, however, the test of the third person's right of action seems to depend upon the question as to whether the promise is made primarily for the benefit of the other party to the contract or of the third person, that is to say, whether the payment is in relief of the promisee and the fact that the money is to be paid to the third person is merely a matter of arrangement or convenience for the other party to the contract, or whether the primary purpose and object of the promise are to benefit the third person. Of course, this distinction cannot exist in an absolute sense, because in every case there is presumably *some* benefit accruing to the promisee or else the contract would not have been so made and, on the other hand, there is also presumably *some* benefit accruing to the third person, by virtue of the fact that he is to be the recipient of the payment. But while, therefore, both the promisee and the third person no doubt receive some benefit in every such contract, the determining question is, whose interest and benefit are *primarily* subserved and as a matter of paramount purpose.

It further appears from the general tenor of the authorities that the question as to whether or not the third person is a party to the consideration is not a conclusive factor. The consideration may be paid wholly by the promisee and yet the third person may be the one for whose benefit the promise is primarily made and in such case the third person has a right of action. Of course,

the fact that the third person is or is not paying any of the consideration may have evidential value in determining whether or not the promise to pay is for his benefit, but, as above stated, this question is not in itself determinative of the question involved. This is indicated in so late an utterance of the Supreme Court as Klinger v. Wick, 266 Pa. 1, where the court says: "Although, as a general rule, most jurisdictions, including our own, recognize the doctrine that a third person may maintain an action on a promise made for his benefit, yet this doctrine is limited to cases where a third person is either a party to the consideration or the contract created in him a legal or equitable interest entitling him to compel performance." That is to say, the requirement that the third person be a party to the consideration is alternative and not additional to the requirement that he have a legal or equitable interest in the contract.

In the present case the bond upon which suit is brought is under seal, and therefore imports a consideration, and this has been held sufficient in such cases: Com. v. National Surety Co., 253 Pa. 5 (at page 12). It is true that this circumstance does not in itself show whether the consideration thus implied moved from the third person or from the promisee, and since the affidavit of defense cautiously questions the defendant's paternity of the plaintiff, the element of consideration in the supposed love and affection of a father for his child is eliminated from the case. If, however, we have properly interpreted the Pennsylvania doctrine, then, as above pointed out, it is not necessary to prove that the consideration moves from the third person. Indeed this would seem to be the general doctrine, and it is so stated in 13 Corpus Juris, 712, section 819.

We thus revert to the only test which is believed to be decisive in the present case, and that is whether the promise to pay a specific part of the money under the bond to the plaintiff is primarily for the latter's benefit, or for that of the obligee, Mary A. Seabrooke. There

would not seem to be much difficulty in answering this question. The bond specifically segregates a certain sum for the plaintiff. The wording as to the manner in which this money is to be paid is somewhat unusual, inasmuch as it provides for payment "to the obligee as guardian of the person of her son, Edward, through the guardian of the estate of the said Edward," but this provision would seem to indicate that the money is to go to Edward's estate and thus become his sole and separate property and then is to be turned over by the estate to the mother as personal guardian of Edward in order that she can devote the money for his maintenance and support. So definite and distinct is the setting apart of the funds to be paid to Edward that it is provided in the bond that in case of the marriage of the mother or in case of the death of the defendant prior to the death of the mother, the principal of the sum set apart for Edward is to be put into a trust for his use and benefit. Indeed the whole tenor of the bond is in effect to provide a separate trust fund for his maintenance and support. Certainly this money is entirely and exclusively for his use and benefit. It is true, of course, that to a certain extent this provision for Edward is for the benefit also of his mother. But, as already pointed out, in all of these cases the provision to pay to a third person is no doubt partly, or at least secondarily, for the benefit of the other contracting party. The point is that the primary and main benefit is for Edward, the third party involved. He has a definite, vital interest in the fund created and in the income therefrom, and it would certainly seem that he thereby comes well within the requirement laid down in Klingler v. Wick, supra, namely, that the contract should create in him "a legal or equitable interest."

There was formerly a question as to whether a third person not a party to a contract could bring suit on it when it was under seal, and therefore whether the action had to be in covenant instead of in assumpsit (Strohecker v. Grant's Executors, 16 S. & R. 237), but this was

a mere technicality dependent upon the old rules of pleading, and apparently no longer exists, since there are many cases in the Pennsylvania reports where actions by third persons upon bonds under seal have been allowed as, for example, in Com. v. National Surety Company, supra.

We are thus led to the conclusion that the plaintiff, Edward, has a distinct interest under the contract which brings him within the principle entitling him to enforce his rights thereunder, although not named as a party to the contract.

(2) The second question involved in the case presents no difficulty. The plaintiff certainly did not lose his right of action and his interest in the bond by reason of the release given by his mother to the defendant, however binding that release may be as to the mother's interest. Without entering upon a lengthy discussion of this matter, it may be sufficient to cite the following quotation from American Mutual Liability Ins. Co. v. Volpe, 284 Fed. R. 75 (at page 79), which correctly sets forth the general and well established law bearing upon this question: "......In order that a minor, without experience and unaccustomed to business transactions, may not be deceived and imposed upon, the law has thrown around him a disability, and since he cannot act for himself, 'it is right......that some one should be authorized in his behalf to compound and settle with his debtor a claim made on account of his estate' and a guardian, who stands in the position of trustee relative to his ward's estate, is the proper person to act for him: Ordinary v. Dean, 44 N. J. Law 64, 67; Lowery's Est., 9 Pa. C. C. R. 88; Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 503, 14 Sup. Ct. 678, 38 L. ed. 528. The father, as the natural guardian of the person of his child, during infancy, has, by virtue of such relationship, no authority whatever to exercise any control over the estate of the minor. He cannot release or compromise a suit prosecuted on behalf of the minor. In order to compromise a

claim of his minor child, he must have the sanction of·
some tribunal, since he has control of the minor's person
only: Isaacs v. Boyd, 5 Port. (Ala.) 388; Miles v. Kaig-
ler, 18 Tenn. (10 Yerg.) 10, 30 Am. Dec. 425; De Cor-
dova v. Korte, 7 N. M. 678, 41 Pac. 526; Naeglin v. De
Cordoba, 171 U. S. 638, 19 Sup. Ct. 35, 43 L. ed. 315.
Natural guardianship confers no right to intermeddle
with the property of the infant, but is a mere personal
right in the father or other ancestor to the custody of the
person of his heir apparent or presumptive until attain-
ing 21 years of age. Lewis's Blackstone, vol. 1, section
461, note 4; Woerner's American Law of Guardianship,
p. 55."

The court, therefore, concludes that the present plain-
tiff has a right of action under the bond, and that such
right was not lost or impaired because of his mother's
settlement with the defendant, since she had no authority
merely by reason of her natural guardianship to com-
pound or release his rights under the bond.

For the reasons above stated the court adjudges the
affidavit of defense to be insufficient and gives judgment
for the plaintiff and against the defendant in the sum of
$4,840, with interest on arrearages from the time they
respectively became due and payable to the date hereof,
the actual amount of the judgment to be assessed in the
usual manner. No execution on this judgment shall
issue, however, or collection thereunder be made, until a
guardian of the estate of the plaintiff shall have been
duly appointed by the court to receive the amount due
and to serve in the capacity designated in the bond itself.

Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*John C. Gilpin*, with him *Graham & Gilfillan*, for ap-
pellant.—The cause of action created by the bond was
in the mother: Blymire v. Boistle, 6 Watts 182.

The minor's interest under the bond is secured to him only through his mother.

If the mother had a cause of action under the bond the minor cannot also have a cause of action thereunder: Klingler v. Wick, 266 Pa. 1; Depuy v. Loomis, 74 Pa. Superior Ct. 497; Guthrie v. Kerr, 85 Pa. 303; McBride v. Paper Co., 263 Pa. 345; Edmundson's Est., 259 Pa. 429.

The sole cause of action was completely settled by the mother for the lump sum of $5,000 before this suit was brought: Haughey v. Rys., 210 Pa. 367; Shamback v. Electric Co., 232 Pa. 641; Weiss v. Marks, 206 Pa. 513; Franklin Sugar R. Co. v. Howell, 274 Pa. 190.

*George M. Henry,* for appellee, was not heard.

PER CURIAM, January 26, 1925:

We affirm the judgment in this case on the opinion of the learned court below.

---

# Phelan et ux., Appellants, *v.* Armstrong Cork Co.

*Negligence—Elevator—Contributory negligence — Death—Nonsuit.*

1. In an action for death of plaintiff's son, a nonsuit is properly entered where it appears that deceased, an employee of third parties, was engaged at work on a stairway which adjoined an elevator shaft of a building in the course of erection, and desiring to summon the elevator he put his head into the shaft to call the operator, and was struck by the descending weights.

2. In such case defendants were not guilty of negligence, and the deceased was guilty of contributory negligence.

Submitted January 6, 1923. Appeal, No. 294, Jan. T., 1923, by plaintiffs, from order of C. P. Lancaster Co., Aug. T., 1917, No. 51, refusing to take off nonsuit, in case of Michael J. Phelan et ux. v. Armstrong Cork Co.